IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ROBERT SCHWARTZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION |
| ) | NO: 1:13-CV-02998-JOF |
| LEVEL 3 COMMUNICATIONS ) | |
| LLC ) | |
| ) | |
| ) | |
| Defendant. ) | |
| ) | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff Robert Schwartz ("Schwartz" or "Plaintiff") hereby brings his claims for violations of the Colorado Wage Act, Breach of Contract pursuant to Colorado Law, Fraud pursuant to Georgia law, and attorney's fees and costs against Defendant Level 3 Communications, LLC ("Level 3" or "Defendant"). On information and belief, Schwartz hereby alleges the following in support of his claims.

## PARTIES

1.

Schwartz is a resident of Georgia. He is subject to the laws of this state and the jurisdiction of this Court.

1

2.

Level 3 is a foreign corporation that is authorized to do business in the State of Georgia pursuant to the laws and policies of the State of Georgia. Defendant maintains several centers of operation in the State of Georgia and has been served in this matter.  Counsel of record will receive notice of this filing through the ec/cmf system.

## JURISDICTION AND VENUE

3.

Jurisdiction and venue are proper in this Court because Defendants are diverse from Plaintiff and properly removed to the Northern District of Georgia. Pursuant to the Employment Agreement at issue in this matter, Colorado law must be applied to claims arising from the Commission Agreement entered into by Plaintiff and Defendant. Georgia law must be applied to all other state law claims.

## OPERATIVE FACTS

4.

Schwartz is a highly successful technology sales person who has been residing in the Atlanta area for a number of years. In February of 2010, Schwartz was hired by Global Crossing, the predecessor corporation to Defendant Level 3. The purpose of Global Crossing's business was to provide telecommunication,

Internet and network infrastructure to large, medium, and small businesses. Schwartz's role with Global Crossing was to provide sales and support services. In exchange, Global Crossing, and later, Level 3, guaranteed Schwartz a base salary plus commissions.

5.

Schwartz immediately began performing his duties, and was almost immediately successful. In April of 2010, Schwartz presented an account to Global Crossing that was massive in scope. This account was with IntelSat, the largest provider of satellite communications services in the world. Schwartz not only originated this account, he began negotiations on the account and ensured that Defendant would obtain the account.

6.

Despite Schwartz's hard work, his direct supervisor, Steve Orlando, approached Schwartz and told him that he would be assigning the account, and the commissions therefrom, to another division. This was despite the fact that all Defendant's contacts with IntelSat were through Schwartz, and that the only reason IntelSat was anticipating signing a contract with Defendant was due to Schwartz's efforts. The commissions from this account would have been worth several hundred thousand dollars to Plaintiff if Plaintiff had been allowed to consummate

the sale. On information and belief, Defendant redirected this account away from Schwartz in order to deprive him of these commissions.

7.

Undeterred, Schwartz continued to do excellent work for Defendant. On numerous occasions Schwartz was credited as being the top salesman and producer for Defendant. For example, in February 2011, Schwartz was congratulated in a companywide newsletter for selling a $200,000 per month account for networking services to Incomm, another prominent telecommunications firm.

8.

In or about April of 2011, Global Crossing was purchased by the named Defendant Level 3. Due to his excellent performance at Global Crossing, Schwartz was retained as an employee of Level 3. Schwartz immediately began performing sales work for Defendant.

9.

On or about July 2011, Schwartz began to approach Novelis, the world's largest producer of aluminum and aluminum products, about handling Novelis' worldwide networking and telecommunication services. Specifically, Schwartz contacted the Chief Information Officer of Novelis, Karen Renner. Due to these efforts and the contacts Schwartz made, Novelis scheduled a number of meetings

4

with Level 3. These meetings were a direct result of Schwartz's efforts and were made possible through Schwartz's diligence.

10.

Due to these initial contacts by Schwartz, Level 3 was informed of an upcoming bid for Novelis' worldwide networking and telecommunications services. Defendant was offered an opportunity to bid on these services solely due to the efforts of Schwartz. Schwartz was named lead salesperson on the account and Defendant assigned him a team of professionals to work with in order to secure Novelis' business.

11.

Schwartz continued to diligently work to secure the Novelis account for Defendant. In September 2011 Schwartz coordinated the first submission of proposed numbers to Novelis as lead salesman. He also led the second submission or proposed numbers in October 2011 and the third in November of 2011.

12.

However, unbeknownst to Schwartz, Defendant was concocting a scheme to deprive Schwartz of yet another large commission. This scheme was devised without the knowledge of Schwartz and was contrary to the reasonable written

representations regarding compensation and commissions that Defendant had presented to Schwartz.

13.

Defendant's scheme consisted of the following:

1. Allow Schwartz to use his personal connections and influence with Novelis to secure the account;

2. Continue to represent to Schwartz that his efforts and hard work would be rewarded with a significant commission of approximately $250,000 per year over the life of the contract in order to continue to incentivize Schwartz to close the deal;

3. Falsely present Schwartz as the face of the company to Novelis and use his personal relationships to secure the account; and

4. Then remove Schwartz from the Novelis account after it had already been closed and deprive Schwartz of his rightfully earned commissions in violation of Colorado Rev. Statute §8-4-101 and § 18-4-401.

14.

Not being aware of this scheme, Schwartz continued to diligently perform his duties and sell the Novelis account. On or about December 7, 2011, Novelis

informed Defendant that it had received the account thanks to the efforts of Schwartz. Schwartz then assisted in contract negotiation with Novelis. A contract worth over $12,000,000 per year, over a three-year period, was then agreed upon in principal between Defendant and Novelis.

15.

On January 11, 2012, the Chief Operating Officer of Defendant, Jeffrey Story sent out a companywide email communication congratulating Schwartz and "the team" for closing this very large contract.

16.

Defendant, through its chief officer on this account, Steve Orlando, then acted in furtherance of its scheme to defraud Schwartz and otherwise deprive him of compensation due and owing pursuant to his agreement and Colorado Law.  On January 12, 2012 Schwartz was informed that he would not be credited for the Novelis account. At a companywide conference, one day after receiving congratulations for originating and closing the deal with Novelis, Schwartz was excluded from the official congratulatory presentation at the company conference.

17.

On January 24, 2012, the day the contract with Novelis was to be signed, Schwartz was contacted by Michelle Hogan, per the instruction of Steve Orlando

and told that he was being removed from the account. Defendant then proceeded to execute the contract with Novelis. The contract was executed and entered into and Defendant's scheme was complete; the $12,000,000 was secured and Schwartz was not being paid the commissions that he was due on said account

18.

At no time did Schwartz agree to obtain the Novelis account for no compensation and without being provided commissions that were due him.

19.

Despite this obvious and open fraud, Schwartz continued to perform at an exceptional level in the service of Level 3 and obtain multiple additional contracts. Nonetheless, in response to Schwartz's protests over the Novelis account, and the illegally withheld commissions from the Novelis account, Schwartz was terminated by Defendant in November 2012.  At the time Schwartz was terminated, numerous commissions due and owing to Schwartz were earned, due and owing. Schwartz has never been paid for these commissions that were, and are, due and owing.

## COUNT I

## FRAUD

20.

Schwartz adopts and incorporates by reference the allegations contained in Paragraphs 1-19 as if fully set forth herein.

21.

Defendant Level 3 owed Schwartz a duty to not make any misrepresentations or omissions of material fact in their dealings with Schwartz relating to his employment and commission arrangement with Defendant.

22.

Nonetheless, Defendants made several misrepresentations and omissions of material fact, both orally and in writing, to Schwartz, in order to induce him to expend his efforts in the acquisition of Novelis account, and other, accounts. These actions include, but are not limited to:

1. Defendant represented to Schwartz that he would be entitled to commissions for accounts that he sold on behalf of Defendant, including the IntelSat, nComm and Novelis accounts, when it had no present intention of providing those commissions to Schwartz;

2. Defendant represented, both publically and in private that it considered Schwartz the "lead salesman" on the Novelis account with no present intention of allowing Schwartz to close the account, but continued to enjoy the efforts and talents of Schwartz;

3. Defendant represented to Schwartz that he would that any sale or revenues produced from the sale of the Novelis account would be counted towards his yearly quota, when it had no intention of giving him such a credit;

4. Defendant failed to inform Schwartz that he would not receive commissions for the Novelis, IntelSat or nComm accounts, despite the significant financial benefit from both of these sales which accrued to Defendant; and

5. Defendants failed to inform Schwartz that the earnings from the IntelSat, nComm or Novelis accounts would not be used as revenue to satisfy his sales quota for the year.

23.

At the time Defendant made the misrepresentations and omissions described above, it had no intent to disclose the truth to Schwartz or to fulfill the promises it made to him concerning his involvement in these transactions.

24.

Defendant's lack of intent to fulfill its contractual obligations from—at latest—the moment of contract formation is evidenced by its pattern and practice of removing Schwartz from large accounts that he had obtained for the firm at the last moment before his commission would have been secured.

25.

Defendants made these false representations in order to induce Schwartz to expend his efforts on its behalf.

26.

Schwartz reasonably relied on Defendant's verbal and written misrepresentations to his detriment, and agreed to be employed by Defendant and to act on behalf of Defendant to Defendant's betterment.

27.

Schwartz's reliance on the verbal and written representations of Defendant was reasonable considering the relationship between the parties and the written nature of the representations.

28.

Schwartz's reliance on Defendant's fraudulent representations has proximately caused Schwartz substantial injury. Schwartz is entitled to

compensation for the deals that he sold on behalf of Defendant and commissions that were not paid. Additionally, Defendant has acted willfully, recklessly and/or maliciously, and with specific intent to cause Schwartz harm. Schwartz is entitled to recover compensatory and punitive damages, as well as his attorney's fees, from Defendant.

## COUNT II

## BREACH OF CONTRACT

29.

Schwartz incorporates by reference Paragraphs 1 through 28 of this Complaint as if fully restated herein.

30.

A valid written contract between Schwartz and Defendant existed in the form of the Commission Agreement. This contract obligated Defendant to pay determinable commissions to Schwartz based on Schwartz's sales performance as an employee of Defendant.

31.

Schwartz performed his obligations under the contract by bringing in large accounts to Defendant, accounts whose existence were owed almost exclusively to Mr. Schwartz's efforts and abilities.

32.

Defendant breached its obligations to Schwartz under the contract by failing to pay large commissions earned by Schwartz under the terms of the contract.

33.

Schwartz has been proximately harmed by Defendant's intentional breach of the Commission Agreement and is entitled to the full compensation he is due.

## COUNT III

## VIOLATION OF THE COLORADO WAGE ACT (COLO. REV STATUTE § 8-4-101, ET SEQ.)

34.

Schwartz incorporates by reference Paragraphs 1 through 33 of this Complaint as if fully restated herein.

35.

Colo. Rev. Stat. § 8-4-103 provides:

> (1)(a) All wages or compensation, other than those mentioned in § 8-4-109, earned by any employee in employment, other than those specified in subsection (3) of this section, shall be due and payable for regular pay periods of no greater duration than one calendar month or thirty days, whichever is longer,

13

> and on regular paydays no later than 10 days following the close of each pay period …..

Further, Colo. Rev. Stat. § 8-4-101(8)(a)(II) defines "wages" as:

> Bonuses or commissions earned for labor or services performed in accordance with the terms of any agreement between an employer and an employee.

36.

Schwartz earned said wages pursuant to his agreement with Defendant on the IntelSat and Novelis accounts.

37.

Defendant has wrongfully deprived Schwartz of these wages and continues to refuse to pay them.

38.

This refusal is intentional, wrongful and in violation of Colorado law.

39.

Defendant owes Schwartz wages earned for commissions on the IntelSat and Novellis accounts, as well as for other earned commissions. Further, Schwartz is entitled to other escalations pursuant to Colorado Law in an amount to be proven at trial.

## COUNT IV

## ATTORNEY'S FEES AND COSTS

40.

Schwartz incorporates by reference Paragraphs 1 through 39 of this Complaint as if fully restated herein.

41.

Defendant has acted in bad faith, has been stubbornly litigious, and has caused Plaintiff unnecessary and extraordinary trouble and expense.

42.

Pursuant to O.C.G.A. § 13-6-11, Plaintiff is entitled to recovery of its costs of litigation, including, but not limited to, attorney's fees.

WHEREFORE, Schwartz prays that this Court:

a. award compensatory and punitive damages in an amount to be determined in the enlightened conscience of a jury;

b. award Schwartz attorney's fees and reasonable costs of litigation; and

c. grant such other and further relief as this Court deems just and equitable.

Schwartz hereby demands a TRIAL BY JURY.

Respectfully submitted this 7th day of October 2013.

/s/ W. Anthony Collins, Jr.
W. Anthony Collins
Georgia Bar Number: 141712
SMITH COLLINS, LLC
8565 Dunwoody Place
Building 15, Suite B
Atlanta, Georgia 30350
(404) 806-7180

## CERTIFICATION

In accordance with Civil Local Rules 5.1C and 7.1D, I hereby certify that this document has been prepared in 14 point, Times New Roman font.

/s/ W. Anthony Collins, Jr.
W. Anthony Collins
Georgia Bar Number: 141712

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| ROBERT SCHWARTZ, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO: 1:13-CV-02998-JOF |
| LEVEL 3 COMMUNICATIONS LLC | ) ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) ) | |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 7, 2013 a true copy of the foregoing has been filed with Court's Electronic Filing System, therefore ensuring service upon:

> C. Todd Van Dyke, Esq
> Justin R. Barnes, Esq.
> **Jackson Lewis LLP**
> 1155 Peachtree Street NE
> Suite 1000
> Atlanta, GA 30309-3600
> (404) 5860-1809

>> /s/ W. Anthony Collins, Jr.
>> W. Anthony Collins
>> Georgia Bar Number: 141712
>> SMITH COLLINS, LLC
>> 8565 Dunwoody Place
>> Building 15, Suite B

Atlanta, Georgia 30350
(770) 378-1408