**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| ROBERT SCHWARTZ,<br><br>    **Plaintiff,**<br><br>    v.<br><br>LEVEL 3 COMMUNICATIONS, LLC,<br><br>    **Defendant.** | Civil Action No. 1:13-cv-02998-JOF |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

Plaintiff Robert Schwartz ("Schwartz" or "Plaintiff") hereby submits this Response in Opposition to Defendant Level 3 Communications, LLC's Motion to Dismiss Plaintiff's Amended Complaint (ECF Doc. 7) and Memorandum of Law in Support (ECF Doc. 7-1), showing the Court as follows:

**ARGUMENT AND CITATION OF AUTHORITY**

**Breach of Contract**

    First, Defendant Level 3 Communications argues that Plaintiff Schwartz cannot state a plausible claim for breach of contract under Colorado law because, it claims, "the plain terms of the Commission Plan, however, demonstrate that no enforceable contract existed between Plaintiff and Level 3 . . . ." Doc. 7-1 at 8. In

1

making this argument, it relies primarily on what it calls "unambiguous disclaimers" in the Commission Plan "that demonstrate that Level 3 did not manifest an intent to be bound by the terms of the Plan. . . . [and that t]he Plan clearly states that the President of Sales 'reserves the right to modify, supplement, or terminate the Plan . . ., in whole or in part, at any time.' " Doc. 7-1 at 11.

"Under Colorado law, every contract contains an implied duty of good faith and fair dealing." City of Golden v. Parker, 138 P. 3d 285 (Colo. 2006) (citing Colo. Rev. Stat. § 4-1-203 (2005); Amoco Oil Co. v. Ervin, 908 P.2d 493, 498 (Colo. 1995)). "A violation of the duty of good faith and fair dealing gives rise to a claim for breach of contract." Id. (citing Cary v. United of Omaha Life Ins., 68 P.3d 462, 466 (Colo.2003)). "The good faith performance doctrine attaches to contracts to effectuate the intentions of the parties or to honor their reasonable expectations. Id. (quotation omitted).

Furthermore, "[t]he duty of good faith and fair dealing **may be relied upon when the manner of performance under a specific contract term allows for discretion on the part of either party.**" Id. (emphasis added). And such discretion is defined as a situation where "the parties, at formation, defer a decision regarding performance terms of the contract leaving one party with the power to set or control the terms of performance after formation." Id. (quotation omitted). "Each

party to a contract has a justified expectation that the other will act in a reasonable manner in its performance. When **one party uses discretion conferred by the contract to act dishonestly** or **to act outside of accepted commercial practices** to deprive the other party of the benefit of the contract, the contract is breached." Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc., 872 P. 2d 1359 (Colo. Ct. App. 1994) (emphasis added).

Defendant relies primarily upon Geras v. IBM, 726 F. Supp. 2d 1292, 1295–1296 (D. Colo. 2010), for authority that the Commission Plan does "not create an enforceable contract under Colorado law." Doc. 7-1 at 9. In Geras, the incentive plan stated that "IBM retained the discretion to alter or cancel [the incentive plan's] policies, even after sales had occurred, and [thus that] it cannot reasonably be construed to be a binding promise or commitment by IBM to provide incentive payments that had not been 'earned' under the plan's terms." Id.

Geras is not controlling here for two reasons. First, the Commission Plan in this case does not contain the explicit language found in the IBM plan referring to the ability of Defendant to alter or cancel policies after sales had occurred, but instead contains the more ambiguous "at any time" language (Doc 7-3 at 18), that can and was reasonably interpreted to exclude the ability of Defendant to shirk its responsibilities even after all work under the Commission Plan had been fully

3

performed by an eligible employee—and to Defendant's complete satisfaction.[1] Indeed, no reasonable person would read the Commission Plan at issue in this case and conclude that Defendant was entitled to entirely refuse payment of commissions—rather than a commission reduced for valid reasons, as the Plan <u>does</u> anticipate—after completion of all work and all sales.

Second, <u>Geras</u> did not address allegations of fraud and the intent of IBM not to honor its obligations to the plaintiff prior to the beginning of performance and prior to multiple promises to pay commissions, as has been alleged in this case. Indeed, the very nature of Plaintiff Schwartz's allegations demands that discovery be conducted to further uncover evidence of Defendant's intentional misrepresentations and fraudulent intent to deny Plaintiff Schwartz commissions <u>from the outset</u> of his performance. Because he has made these allegations, a motion to dismiss as to his breach of contract claim is improper and Schwartz should be permitted an opportunity to prove that Defendant "use[d its] discretion conferred by the contract to act dishonestly or to act outside of accepted

---

[1] Defendant intentionally attempts to mislead this Court when its states in its Memorandum of Law that Plaintiff Schwartz was terminated "for poor performance." Doc. 7-1 at 4. In a motion to dismiss, Defendant is required to accept Plaintiff Schwartz's allegations as true, and he has emphatically denied that his performance was subpar or unsatisfactory in any way, and has in fact alleged throughout his Complaint that his performance was exemplary and that his efforts reaped enormous profits for Defendant.

4

commercial practices to deprive [him] of the benefit of the contract . . . ." Wells Fargo Realty Advisors Funding, Inc., 872 P. 2d 1359.

Finally, it must be underscored that the Colorado Wage Act modifies the Commission Plan at issue in this case by operation of law, limiting Defendant's ability to change the commission rate after the fact. "The CWCA requires that, when an employee has been terminated, any wage 'earned, vested, determinable, and unpaid at the time of such discharge is due and payable immediately.' " Hallmon v. Advance Auto Parts, Inc., 921 F. Supp. 2d 1110, 1119 (D. Colo. 2013) (quoting Colo. Rev. Stat. § 8-4-109(1)(a)).

In Hallmon, the defendant employer argued "that [plaintiff was] not entitled to . . . bonuses for the last two bonus periods of his employment, because the bonuses were not earned or vested by the time that [he] was terminated." Id. at 1120. There, the bonus plan at issue stated that "employees must be an active Team Member at time of payout' to receive bonuses after termination." Id. (quotation omitted). The defendant argued that the plan "provides expressly and unequivocally" that [the plaintiff] is only entitled to bonuses if he remains an employee" and that because he had been terminated " one day before the bonuses were paid out" that he had no right to any "bonuses he would otherwise have received." Id.

The District Court rejected this argument and concluded that the continued employment requirement did "not redefine when [the plaintiff] ha[d] earned his bonuses or when they ha[d] vested. Rather, it provide[d] a condition for the payment of bonuses that otherwise ha[d] already vested and [we]re already determinable within the meaning of the CWCA. Id. The Hallmon court reasoned that adoption of the defendant's argument "**would allow employers to manipulate similar contractual language to avoid paying rightful wages to employees** by conveniently terminating them shortly before their payday, contravening the public policy behind the CWCA." Id. (emphasis added).

As in Hallmon, here defendants have attempted to manipulate the language of the Commission Plan to construe it as a license to commit fraud and deprive Plaintiff Schwartz of the wages he has rightfully earned. Here, as in Hallmon, Defendant's behavior is in direct violation of the public policy behind the Colorado Wage Act. In this case, Plaintiff Schwartz fully performed with every obligation he had under the Commission Plan, which made the amount of his interest in the commission readily determinable—subject only to the good faith discretion of the President of Sales to modify his commission for a variety of legitimate reasons— and vested, despite the fact that it had not yet been paid. See Rohr v. Ted Neiters Motor Co., App.1988, 758 P.2d 186.

While Defendant's President of Sales was authorized to exercise his discretion in determining the amount of any commission that would be paid to Plaintiff Schwartz, Defendant denied payment of any commission having absolutely no legitimate reason to withhold it. In fact, Defendant had intentionally plotted this fraudulent course

In the present case, Plaintiff Schwartz had fully performed every obligation he had under the Commission Plan, which made the amount of his commission readily determinable, subject only to the good faith discretion of the President of Sales to modify his commission for a variety of legitimate reasons. But Defendant had no legitimate reason, and had in fact planned depriving Schwartz of his commissions, prior to Schwartz's performance, all the while with no present intent to pay the commissions owed. Just as in Hallmon, Defendant terminated Plaintiff Schwartz simply to avoid payment of the substantial commissions he was owed. It should also be noted that in the present case the payments due were **commissions**, and not bonuses, a category that very clearly falls within the Colorado Wage Acts definition of "compensation," unlike the bonuses discussed in Hallmon.

Any discretion allowed under the Commission Plan cannot encompass such fraudulent acts, and the obligations of both parties must be construed in such a way that they are consistent with language and public policy goals of the Colorado

Wage Act. Dismissing Plaintiff Schwartz's claim for breach of contract at this point would absolutely undermine those goals and the very purpose of the law.

**Colorado Wage Act**

<u>Applicability</u>

Defendant argues in its Motion to Dismiss that the Colorado Wage Act does not apply here because the Colorado Division of Labor has stated that "that Colorado's wage and hour laws apply only to employees who work within the State of Colorado, regardless of the location of the employer's headquarters or other factors." Doc. 7-1 at 14. To make this argument, Defendant has had to ignore both the rationale for the CDoL's opinion and the facts of this case, which make clear that the CDoL limitation is inapplicable here.

The CDoL believes that "[t]he application of Colorado wage and hour laws to employees who solely perform work in other states would lead to patently absurd and unacceptable results[.]" Doc. 7-1 at 14–15. First, as the CDoL explains:

> The Division **lacks the territorial jurisdiction** to superimpose its own wage and hour laws over the laws of another state in which the work was actually performed. In such a situation, and where a **conflict of law is likely to be encountered**, Colorado law would not be the controlling authority, nor would Colorado be an appropriate forum for such adjudication.

Doc. 7-4 at 2 (emphasis added). Further, the CDoL enumerates the follow "asurdit[ies]" it seeks to avoid by limiting the geographic scope of the application of Colorado's Wage and Hour laws:

- Employees could file suit by **hand-picking from multiple state laws** (e.g., laws from other states where the employer has employees; Colorado laws; the law from the state where the work is performed; etc.);

- Employers would be confronted with the **costly and onerous task of comprehending and adhering to multiple (and potentially conflicting) state laws** for a pool of similar employees even when they are solely located and working within one state;

- **State labor agency costs would increase exponentially** (e.g., the exorbitant cost of conducting out-of-state investigations, phone and mailing cost increases, the cost of out-of-state education for employers, etc.); and

- **States would be prohibited from ensuring the uniform treatment of employees in their state**, thus nullifying the intent of voters and the mandates of State Constitutions, established legislation, and regulations.

Doc. 7-4 at 3 (emphasis added). Not a single on of these potential problems have any relevance to this case.

**Defendant** chose Colorado Law to govern this action in its own Commission Plan, a contract of adhesion that Plaintiff Schwartz had to accept in order to work for Defendant. Now, Defendant has decided it does not like Colorado law; indeed it seems that its choice of law clause was poorly thought out on its part, given the protections that Colorado Law offers employees. But

9

Defendant nonetheless chose Colorado law and must now be bound by that choice, just was it would bind Plaintiff to its acceptance of the provision, were the shoe on the other foot.

Not a single of the bases the CDoL offers for limiting the geographic scope of the Colorado Wage Act has any relevance to this case:

1. Territorial jurisdiction and conflict of law are not at issue here, because the entire agreement is governed by Colorado law by the agreement of the parties.

2. Forum selection by Plaintiff Schwartz was not influenced by the choice of Colorado law; indeed, Plaintiff Schwartz filed suit in Georgia rather than Colorado.

3. There is no indication it is more costly or onerous for Defendant to comply with Colorado law, and, in any event, Defendant chose for Colorado law to apply.

4. CDOL action is not anticipated or necessary in this case.

5. Georgia's ability to ensure the uniform treatment of employees in Georgia is not compromised, except insofar as the choice of law provisions of individual contracts have expanded the rights of the parties thereto, just as may be the case with any contract.

Finally, the Colorado Division of Labor's opinion only restricts the applicability of the Act <u>by its own terms</u>, but the CDoL has no ability to restrict the choice of law decisions that private parties choose to make. Defendant and Plaintiff could have agreed to have the law of Zimbabwe control the rights and obligations under the Commission Plan at issue in this case. In that case, the Zimbabwean Ministry of Labor's opinion on the matter would not have mattered in the least. Zimbabwean law would apply because that is what the parties agreed to. The same is true here. Defendant must be bound by <u>*the contractual terms it drafted and agreed to*</u>:

> **Section 3.12 Applicable Law** The terms and conditions of the Plan shall be governed by and construed in accordance with the laws of the State of Colorado, without regard to choice of law provisions.

Doc. 7-2 at 17 and Doc. 7-3 at 19. Thus Defendant's obligation to pay those commissions due under "the terms and conditions of the Plan[s]" must be governed by the law of Colorado and specifically the Colorado Wage Act.

<u>Violation of the Colorado Wage Act</u>

Defendant next claims that Plaintiff Schwartz has failed to state a plausible claim under the CWA because he had not enforceable right to compensation under the Commission Plan or under the CWA. Doc. 7-1 at 15–16. This contention is at odds with the purpose of the Colorado Wage Act, which "is to be liberally

11

interpreted," to ensure that fairly earned wages are paid in a timely manner and "to provide adequate judicial relief in the event wages are not paid." Fang v. Showa Entetsu Co., Ltd., 91 P.3d 419 (Colo. App. 2003). The Colorado Wage Act limits employers' ability to exercise "discretion" in a way that allows them to deceptively and dishonestly "manipulate . . . contractual language to avoid paying rightful wages to employees . . . [thus] contravening the public policy behind the CWCA." Hallmon, 921 F. Supp. 2d at 1120. Because—as discussed above—Defendant's denial of Plaintiff Schwartz's rightfully earned commissions was a bad faith and fraudulent exercise of its discretion under the Commission Plan that use discretion falls outside the scope of that good faith discretion both anticipated by the terms of the Commission Plan, and permitted under Colorado law.

For the reasons stated in the previous section, Plaintiff Schwartz's rights to a commission payment fairly and honestly determined by the President of Sales under the terms of the Commission Plan had vested upon his complete and wholly satisfactory performance under the Plan's terms. Because Defendant acted dishonestly is failing to use good faith in exercising its discretion to refuse him commission payments and because it fraudulently represented to him that commissions would in fact be paid after his complete performance, Plaintiff Schwartz's rights under the plan had fully vested, and Defendant's refusal to pay

12

said commissions in a timely manner was manifestly a gross violation of his substantive right to compensation under the Colorado Wage Act.

**Fraud**

Defendant argues that Plaintiff Schwartz's fraud claim must fail "because Plaintiff was fully aware that Level 3 had complete and unlimited discretion regarding whether and how much commissions to pay Plaintiff." Doc. 7-1 at 17. As discussed at length above, the terms of the Commission Plan neither unambiguously state that discretion as to commission payments extended <u>after full performance</u> had occurred, and to the extent that they attempt to, they conflict with the language and public policy goals of the Colorado Wage Act and must be read to exclude such an application.

The terms of the Commission Plan, Defendant's numerous assurances to Plaintiff Schwartz that his commissions would be paid, Defendant's intention from the outset of performance not to pay the commissions due, Plaintiff Schwartz's substantial reliance on the Plan and those assurances by performing under the Plan, and the enormous benefit to Defendant by denying Plaintiff Schwartz his commission could not more clearly establish a clear case of fraud under Georgia law. See <u>OnBrand Media v. Codex Consulting, Inc.</u>, 301 Ga. App. 141, 149, 687 S.E.2d 168 (2009).

**Attorney's Fees and Expenses of Litigation**

Because Plaintiff Schwartz's other claims are meritorious, Defendant's motion to dismiss his derivative claim for attorney's fees and expenses of litigation pursuant to O.C.G.A.§ 13-6-11 should be denied.

**Leave to Amend**

Plaintiff Schwartz respectfully requests leave to amend his First Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(2) which provides that should this Court determine that he has not stated a plausible claim to relief with respect to any of his four claims he should be allowed the opportunity to rep-lead such claims.

**Request for a Hearing**

Plaintiff Schwartz further requests a hearing on Defendant's Motion to Dismiss.

Respectfully submitted this 12th day of November 2013.

/s/ *W. Anthony Collins, Jr.*
W. Anthony Collins
Georgia Bar Number: 141712
SMITH COLLINS, LLC
8565 Dunwoody Place
Building 15, Suite B
Atlanta, Georgia 30350
(404) 806-7180

## **CERTIFICATION**

In accordance with Civil Local Rules 5.1C and 7.1D, I hereby certify that this document has been prepared in 14 point, Times New Roman font.

>/s/ *W. Anthony Collins, Jr.*
>W. Anthony Collins
>Georgia Bar Number: 141712

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ROBERT SCHWARTZ,<br><br>    Plaintiff,<br><br>    v.<br><br>LEVEL 3 COMMUNICATIONS, LLC,<br><br>    Defendant. | Civil Action No. 1:13-cv-02998 |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 12, 2013 a true copy of the foregoing document has been filed with Court's Electronic Filing System, thereby ensuring service upon:

    Justin R. Barnes & C. Todd Van Dyke
    Jackson Lewis LLP
    1155 Peachtree Street NE
    Suite 1000
    Atlanta, GA 30309-3600
    (404) 5860-1809

    /s/ W. Anthony Collins, Jr.
    W. Anthony Collins
    Georgia Bar Number: 141712
    SMITH COLLINS, LLC
    8565 Dunwoody Place
    Building 15, Suite B
    Atlanta, Georgia 30350
    (404) 806-7180